Good morning, my name is Hector Montoya. I represent the Appellate Court in La Gariza, Pinuelas-Sanchez. As the Court is aware, Mr. Pinuelas-Sanchez was sentenced back in August of 2002. And prior to that, he had a prior sentencing date in June of 2002, which was continued to the August date. At that time, there was no disagreement, I think, between the Government's counsel and the Appellate's counsel with regards to Mr. Pinuelas-Sanchez's qualifications under the Safety Belt Statute or 183553 as it's described under the Code and under 5C.1.2 as it's described under the Sentencing Guidelines. So the issue lies solely with the fifth prong of that statute or the Sentencing Guidelines. And for further reference, I'm just going to refer to it as the Safety Belt. Mr. Pinuelas-Sanchez was arrested on the Tohono O'odham Reservation. And at the time of his arrest... You do concede that he did not make a full disclosure, right? No, I do not concede that. Well, he withheld information. Will you concede that? No, I do not concede that either. Okay, did he tell them everything? It's our position he told them everything. Okay. And I like to... Why don't you explain your answer to that, because that's not the way I read the record. Did he identify where the vehicle came from, who the loaders were, and all his knowledge about the whole thing? If you look at the transcript of the second sentencing date of August 2002, after I had spoken to both Mr. Pinuelas-Sanchez and his family, Mr. Pinuelas-Sanchez indicated that the information, if it was to be disclosed, would have to be discussed with his family. I never asked him personally if he had that information, but it was my understanding... Well, that's not the problem. What you asked him is what's on the record, and did he meet his burden of proof? Again, if you look at the transcript of the last sentencing date, it was our position that he had disclosed everything that he knew. And if you look at page 4, I believe, of the transcript of that sentencing date, we indicated to Judge Jorgensen at the time that he had disclosed everything that he had in his position in terms of information. And that has been our contention all along throughout this case. I think not only had he disclosed everything, but he had the opportunity or was given the opportunity to disclose everything on two different occasions. The first time when he was initially arrested in this particular case by law enforcement on the Tohono O'odham Reservation. At that time, he was willing to cooperate with the government at that time and disclose all the information that he knew at that particular time. Can I direct you back to the transcript of that hearing on page 2, where you said there's two pieces of information that the government seeks, a name and an address, okay? He contends and has contended ever since his arrest that giving that information out presents a significant risk to not only him but to his family in Mexico, okay? His main concern is his brothers and sisters that live in Mexico. He feels that doing so could result in serious consequences. Now, how could he have any of that fear, how could you ever make that representation, if he had no information to give? Okay. I think the assumption that was being made by both the government's counsel and the court at the time was that in fact that he had that information. No, by you. That's your statement. Yeah. And who has the burden, the government or you? We have the burden of coming forward with all the information, and I don't disagree with that. The case law is very clear on that issue. However, I think there's an interpretation problem. My position was that Mr. Pinoel Sanchez needed to discuss this issue with his family, I guess for various reasons. One was fear for their safety. And as a result, there was no indication on my part that he knew the names of the individuals. First of all, it gave him the truck and the drugs that was transported, nor that he knew the actual address where it was. So he just went out someplace and stole this truck? He didn't know who gave it to him? I think if we go back and look at the record. Nobody handed him the keys? Okay. Nothing? If we go back and look at the record, Mr. Pinoel Sanchez's whole contention from the very beginning was that this particular vehicle was given over to an individual, okay, who then took the truck and returned it to him sometime later just to drive it. Counsel, if he had nothing more to give, what did he need to go talk to his family about? Why the 30-day continuance? What was the need? If everything had been divulged, what else was he going to talk about? I think he was going to ask his parents to assist him to help him find that information. But you just said that he had already given the information, so if he's going to go ask for help to give it, isn't that inconsistent with the position you're taking? Well, maybe I'm not making myself clear, obviously, is that it was his position that he did not have that information. The information was information, I think, that was possessed by his family in some way or another that he needed to go back and consult not only with his mother, which I put on the record, but then later on his mother told me, and I put that on the record, that he needed to go consult with his father. And the only thing I could gather from that at that point in time was that, in fact, it was the family that either was going to gather that information for him or that had that information. All right. So what did he know and reveal about, in answer to Judge Beezer's question, how he came into possession of the vehicle itself? How did he come into possession of the vehicle? He indicated that somebody had brought the vehicle back to him. Who? Well, he didn't indicate that he knew the name of the individual. It's just that some individual who was supposed to be at a certain place was going to bring him there. Did he describe him to the government? You know, I don't think he described him to the government because I don't think the government ever asked him specifically for a description of the individual because they insisted and were so focused on knowing a name that I don't think they ever bothered to expand on that line of questioning. So what you're telling us is that what you were saying or intending to say is that he did not personally in his own mind know the name and address. That is correct. It's just that he believed that it might be within the capability of his family if he were to do some investigation or ask them, let me finish, then he could then be in a position to tell the government, and he was fearful of involving his family in that research. That is correct. All right. That's correct. And that brings up the, I think, another interesting issue with regards to this particular case because, you know, this individual, Mr. Pinole-Sanchez, had two sort of bites out of the apple. One was when he was arrested where he divulged cooperated and there was no contrary evidence to indicate he did anything other than cooperate with the government at the time of his arrest. And secondly, he had the opportunity in his pre-sentence interview, Mr. Wayne Becker, who did the pre-sentence interview. At that point in time, he had divulged the same information, was very consistent with all the information that he gave the first time, so much so that Mr. Becker, when he did the initial draft of the pre-sentence report, recommended that Mr. Pinole-Sanchez qualify for safety belt eligibility. He indicated in the initial draft that Mr. Pinole-Sanchez had cooperated and divulged all the information. It was not until the government made a phone call to Mr. Becker indicating that he was not eligible, that he did not qualify. At that point in time, the government filed an objection to the draft pre-sentence report. And at that point in time, Mr. Becker, without re-interviewing or re-assessing the situation with Mr. Pinole-Sanchez, I think arbitrarily changed his pre-sentence report and re-edited it to indicate that Mr. Pinole-Sanchez had not. Counsel, excuse me. Let me ask you back to Judge Fisher's question. Your statement was that he did not know everything, but if he went to his family, he might be able to get that additional information. Is that correct? That's correct. Once he got that information, did he divulge that, or was he unable to get any additional information from his family? It was my understanding, because I dealt mostly with the mother, that the family did not want to. But the question is, did Mr. Pinole-Sanchez give any additional information whatsoever after he consulted with his family? No, he did not, because he didn't have any other information to give. He had already divulged all information up to that point that was within his possession. So they wouldn't tell him. They would not tell him, or they would not assist him in helping him gather that information. Again, I think out of personal safety concerns. With the Court's permission, I'd like to reserve my last minute. You may. May it please the Court. My name is Jeffrey Jacobson. I represent the United States in this case. Your Honors, the District Court did not clearly err when it found at the August 9th sentencing that the defendant did not qualify for safety valve relief in this case because he did not provide, prior to sentencing, all information and evidence he had regarding this offense and his involvement in this offense that were part of the same course of conduct or of a common scheme or plan. So what specifically did the government think he withheld that he actually knew, as opposed to going to his family and finding out if that were the case? The government's position is that he specifically withheld the name and address of the person that supplied the truck to him that put the cocaine in the truck. And what was the basis for your position that he actually knew that? Several places, Your Honor. First, the District Court made a factual finding that he did not have that information or he, I'm sorry, that he declined to provide that information. Well, that's not the same thing as knowing that he had the information. Well, the standard of review in this case is whether or not the District Court, as this Court is aware, clearly erred in making a factual finding that the safety valve relief was available to the defendant. I know, but the issue that's being posed to us, at least this morning, is that what he was telling the court, what your counsel was telling the court, is that you wanted the name and address and that he wasn't divulging it. And so the court entered a finding that he wasn't divulging that. But if he didn't know that, but rather the issue was whether he should go back to his family and make an effort to find out, was that adjudicated by the District Court? There are several places in the record, Your Honor, where the defendant or through defense counsel really indicates that he does have that information. I would note that the pre-sentence report, the revised pre-sentence report in paragraph 4, begins with defendant was questioned before the cocaine was moved from the truck. He indicates that he owned the vehicle, that he was to receive $3,000 from a man he refused to identify that smuggled the drugs to Phoenix. He had given his truck to this man in Mexico three days earlier. It was returned to him with contraband inside. He refused to identify the person who he gave his truck to. He refused to disclose the location of the delivery in Phoenix. The defendant adopted these facts later when he was interviewed by the pre-sentence report writer, Mr. Becker, in the same pre-sentence report in paragraph 8 under acceptance of responsibility, and I quote, when interviewed, the defendant essentially repeated statements made to the agents at the time of arrest. The defendant never filed objections to either of those paragraphs in the pre-sentence report. What was the last paragraph? Paragraph 8 of the pre-sentence report under acceptance of responsibility. So he was interviewed by agents. He told the agents what he knew, that he refused to have the information disclosed, refused to disclose the name and address of the person in Mexico that supplied the cocaine to him, put it in his truck, gave him the truck, and that he refused to disclose the address. Well, I just want to understand, because I have read both of those. The paragraph 4 does talk about the refusal to identify and the decline to provide any specific information. Paragraph 8 is a little ambiguous. It says when interviewed, the defendant essentially repeated statements made to agents at the time of his arrest and goes on to say he indicated he was duped and so on. It doesn't clearly say that he repeated precisely what is recounted in paragraph 4. But in any event, so at the state of the PSR, what apparently he wasn't giving was what is set forth there. But you said that what the government really wanted was name and address. Name and address of the person. But where in this does it indicate that in paragraph 4 that he had the name and address? In paragraph 4, he states that he refused to give the information. Yeah, but that's why I asked counsel before about did he give any description of the person. I mean, if this is a low-level guy, and, you know, people don't go around giving out names and addresses necessarily to the mules, so it's conceivable he wouldn't have name and address, but he might have something that would help you track him down. That seemed to be the thrust of 4. Now, you're saying you were pushing for something more precise, and what I'm trying to understand here is if the safety valve depends on how the government frames the question, if the government wants more than what he actually has and isn't satisfied, if paragraph 4 were what you wanted, a physical description, any circumstantial evidence from which you could track it, that's one thing. But if what you're saying is that this, by the hearing, morphed into a specific request for name and address, then you're imposing a condition on the safety valve, which I'm not sure it was intended to impose. This isn't a discovery device. It's a cooperation device. Well, Section 5C1.2 does say all information and evidence that the defendant has. Has, right. And the government's position is that he did not disclose all that he had. And that was what? And that was the identity of the person who gave him the cocaine, put the cocaine in the truck. But if he didn't know the identity, he could give you a physical description. That's correct. And if he had given that, that would have been sufficient, then? I believe that that would have been sufficient for the court. It's the court's factual findings as to whether or not he clearly erred in providing that information to the government. He was given plenty of opportunity to give something to the government, something that the court could hang its hat on and say that he complied. And I think the court really went out of its way in this case to give him over a month to discuss it and decide whether or not he wanted to provide some information, anything, regarding the identity of the person who put the cocaine in the truck and the address that it was to be delivered to in Phoenix. What did the government, because that's cooperation with the government, that's what the court is being asked to evaluate. And so if the government is saying, we want name and address, and that's what the defendant is focused on, trying to get the name and address, and you're never asking for something less than that, then what position is the court in when the government comes in and says he isn't giving us what we need here, he isn't cooperating with us in that sense? Really, 5C1.2 is a tell-all-you-can-tell provision. Right. And it does require an affirmative act on the defendant's part to give this information. And that's been found by the first, fourth, and seventh. I understand that. I'm trying to understand. So you're saying that the government comes in to the court and says, well, you know, he didn't tell us everything you know, i.e., he didn't give us name and address, which is what you told us here today. But if he had come in and said, look, I told him the description, I told him this, that, and so on, then the court could have said, sorry, government, you're not ñ the conversation we're having this morning would have been in the district court, and the district court could have evaluated it and decided whether or not he had cooperated. But because he didn't proffer anything, then it's his problem. Anything regarding those two issues, that's correct, Your Honor. Thank you. And that's what the court found. The district court made its findings, stating, and I quote, the facts of this case show that this is not a case where the defendant didn't know the additional information about this scheme or conspiracy, but that he failed or declined to provide that information to law enforcement. And that's really where the ñ this court has to determine whether or not it clearly ñ the district court clearly erred in making that finding based on its factual findings of the same sentencing hearing. And you place the burden on the defendant, right? That is correct, Your Honor. The burden of proof is on the defendant to show that he did provide all information, and he never said on the record that he didn't have the information or that he talked to his family and they didn't have the information or his family refused to give him the information, therefore he didn't have it. Well, my concern is, counsel, that the purpose, as I understand it, of the safety valve in the first place was to give the district court some discretion to ameliorate the guidelines for these low-level folks. And the idea of it was not as a discovery device for the government. It was a cooperation device. And my concern here is that ñ and the reason for my question is, what was the nature of the conversation between the government and the defendant? If the defendant is led to believe that all of this turns on whether he gives name and address and the other information is not particularly relevant or of interest to the government, that puts him in a situation where he's not thinking of what he needs to do. And I'm not saying the record supports all of that, but that is the tension it seems to me that we're involved in here from my perspective. And I think the court evaluated the quality of the lack of information that was given to the government. May I complete that thought? You may. The court evaluated that, and really 5C1.2 was designed to have the defendant give the information to the government but to take the government out of the decision-making process as to whether or not he qualifies for that departure and really rest it in the hands of discretion of the district court to determine whether or not he is eligible for relief from safety valve. That's what the Mandatory Minimum Sentencing Reform Act was really designed to do. Okay. Thank you. Thank you. Just quickly, I stand corrected. The statement to the court appears on page 6 of the transcript that indicates that I indicated to Judge Jorgensen at the time that Mr. and Mrs. Sanchez had divulged all information that he knew up to this point in time and therefore was safety valve eligible. So what should the judge have understood from that? The judge should have understood that he had cooperated fully whether that information was useful or not. Well, did you? You started off by telling the judge that what the government wanted was name and address. Did you ever tell him that he didn't know name and address but he cooperated with the government in giving them descriptions of the person that he saw, all of the facts that might lead up to that short of name and address? Well, I started by telling the court that we had divulged all information that we knew was fairly clear. In light of paragraph 4 of the PSR? And we stated several times throughout this discussion with the court that we thought he was safety valve eligible and therefore had qualified. Well, that's a conclusion, counsel. That's a conclusion. I mean, you got the PSR, which says he's not divulging anything about the guy in Phoenix. So you then tell the court at the hearing that it's name and address that they want. You may have been, maybe it's right, he didn't know the name and address, but did you disclose to the court in any fashion that he had given everything else that might be short of name and address? And we indicated to the court that, you know, we did not know the name and address. And it goes back to your contention a little while ago in the question that we cannot be second-guessing exactly what the government thinks is going to be important in terms of information. No, I understand that. Because the argument always being it can always be characterized. No, I understand that. But, you know, as the government points out, there's a statement in the PSR paragraph 4 as to what he had refused to, who he had refused to identify, and that he had declined to provide any specific information as to where in Phoenix they were to unload the drugs. So those are two specific things that the district court had, failures of information that the district court had. Now, you're saying that's cured by you're saying, well, he's told them everything he knows. Well, it's cured by that and by the fact that it's interesting to note that in the initial pre-sentence report, the initial pre-sentence report indicated that he had given all information and that the line saying that he refused to give information regarding the location or delivery location was never existed until the final draft, okay? Because at that point in time, Mr. Wayne Becker didn't realize, well, he didn't think it was important information. Nobody had asked Mr. Pinoa-Sanchez during his interview whether he knew that information. Counsel, you agree that the timeline on the disclosure is at the time of sentencing, right? Correct. So anything that goes on up to the instant of sentencing is the area of time that his obligation falls within. Correct. And it's his burden to show he made the disclosure during that time frame. Correct. And that's why we filed the objection to the pre-sentence report and we filed the pre-sentence report. So the fact that there was a recommendation one way or another, give and take, up to the point, the time of sentencing really is not terribly relevant, is it? Well, the court thought it was relevant because the court continued to ask questions and wanted to know whether, in effect, we were going to divulge any information. So I would take a position that's a little different than that. Counsel, do you have a belief that there is, for lack of a better term, a good faith qualification for that final criteria for the safety valve? In other words, if there is a threat to a defendant and or his family, that there should be some consideration given by the court, the district court, when making the determination whether there's been a full and complete release of information? You know, the government's response to our appeal indicates that that's not a parameter or something that should be taken into consideration with regards to the safety valve qualification. But it's our contention that it is, especially in light of the fact that these individuals reside in Mexico and outside the protection of the U.S. government, to somehow defend themselves against individuals that may want to take some kind of retribution against them. Thank you. All right. The case just argued will be submitted.
judges: Beezer, Fisher, England